UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



———————————————————

RONNIE JOE PARKER,

        Plaintiff,

    v.

JOEL D. BLACKERBY, DOUGLAS
LANDY, KIM DEAN, and CLIFTON
SPRINGS HOSPITAL,

        Defendants.

———————————————————

**DECISION AND ORDER**

6:16-CV-06475 EAW

## **INTRODUCTION**

Plaintiff Ronnie Joe Parker ("Plaintiff"), who was criminally charged with threating the life of the President of the United States and ultimately acquitted by a jury, brings various federal and state law claims against the defendants, former United States Secret Service Special Agent Joel D. Blackerby ("Agent Blackerby"), Clifton Springs Hospital ("CSH"), Dr. Douglas Landy ("Dr. Landy"), and registered nurse Kim Dean ("Nurse Dean") (collectively "Defendants"). (Dkt. 8; Dkt. 9). Currently pending before the Court are Agent Blackerby's motion to dismiss the claims against him (Dkt. 26) and CSH's, Dr. Landy's, and Nurse Dean's (collectively the "CSH Defendants") motion for summary judgment (Dkt. 49). For the reasons set forth below, the Court grants Agent Blackerby's motion to dismiss, grants the CSH Defendants' motion for summary judgment with respect to Plaintiff's federal claims against them, and dismisses Plaintiff's state law claims against the CSH Defendants without prejudice for lack of jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

CSH is a private community hospital and nursing home located in Clifton Springs, New York. (Dkt. 49-2 at ¶ 1).[1] Dr. Landy is a board-certified psychiatrist and has been employed by CSH for approximately six years. (*Id.* at ¶ 2). Nurse Dean is a registered nurse and has been the unit coordinator for CSH's inpatient psychiatric unit since April 2011. (*Id.* at ¶ 3).

Plaintiff is diagnosed with paranoid schizophrenia. (*Id.* at ¶ 4). On February 4, 2014, Plaintiff was transported via ambulance to CSH's emergency room because he was hearing voices telling him to harm himself and others. (*Id.* at ¶ 6). Plaintiff was admitted to CSH's inpatient psychiatric unit, where he met with Dr. Landy for an initial inpatient evaluation. (*Id.* at ¶¶ 8-9). Plaintiff told Dr. Landy that he was having auditory hallucinations commanding him to kill himself and others, including the President of the United States. (*Id.* at ¶ 9).

Dr. Landy contacted the Secret Service to advise them that "one of his patients had auditory hallucinations of command to kill then-President Obama." (*Id.* at ¶ 10). Dr. Landy spoke to Agent Blackerby, who requested to meet with Plaintiff at CSH the following morning. (*Id.* at ¶11). Dr. Landy advised Plaintiff that a Secret Service Agent

---

[1]    The facts pertinent to Plaintiff's claims against the CSH Defendants have been taken from the CSH Defendants' Local Rule 56 Statement of Undisputed Facts, which is supported by citations to admissible evidence and to which Plaintiff has failed to file any opposing statement of facts. *See N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648 (2d Cir. 2005) (under such circumstances, a court may credit an unopposed statement of facts). As discussed further below, in considering Agent Blackerby's arguments under Federal Rule of Civil Procedure 12(b)(6), the Court has limited its consideration to the facts set forth in Plaintiff's Second Amended Complaint.

would be coming the following morning to speak with him regarding his statement about the President and Plaintiff indicated that he was agreeable to the meeting. (*Id.* at ¶ 12).

On February 7, 2014, Agent Blackerby met with Plaintiff in a conference room at CSH's inpatient psychiatric unit. (*Id.* at ¶ 13). Dr. Landy and Nurse Dean were present for the entirety of the meeting. (*Id.*). After the meeting, Agent Blackerby told Dr. Landy and Nurse Dean that he would "report his investigative findings to the appropriate individuals to make a decision regarding whether criminal charges would be pursued against Plaintiff." (*Id.* at ¶ 18). Agent Blackerby also asked to be contacted when Plaintiff was discharged from CSH. (*Id.*). Plaintiff was discharged from CSH on February 28, 2014, and the Secret Service was notified. (*Id.* at ¶ 19).

Plaintiff was indicted on April 10, 2014, for threatening the life of the President of the United States, in violation of 18 U.S.C. § 871. *United States v. Parker*, 6:14-CR-06045, Dkt. 11, at *1 (W.D.N.Y. Apr. 10, 2014). Plaintiff was alleged to have "told a special agent of the United States Secret Service that he was going to 'find him (the President) and kill him. . . .'" *Id.* Plaintiff was released on bail, but shortly thereafter he violated the conditions of his pretrial release, his release was revoked, and he was detained until the conclusion of the trial. *See Parker*, 6:14-CR-06045, Dkt. 36 (W.D.N.Y. Dec. 15, 2014). A jury trial commenced on September 8, 2015, and Plaintiff was acquitted when the jury returned its verdict on September 10, 2015. *See Parker*, 6:14-CR-06045, Dkt. 78 (W.D.N.Y. Sept. 10, 2015).

Plaintiff filed this action on July 8, 2016, alleging violations of his constitutional rights relating to his arrest, incarceration, and prosecution. (Dkt. 1). Plaintiff filed an

amended complaint on January 10, 2017, (Dkt. 6), and a second amended complaint on

February 14, 2017 (Dkt. 8) (the "Second Amended Complaint"). On April 14, 2017, the

Court entered a Decision and Order screening Plaintiff's Second Amended Complaint

pursuant to 28 U.S.C. § 1915(e)(2). (Dkt. 10). The Court dismissed certain of Plaintiff's

claims, and permitted the following claims to proceed to service: (1) a false arrest claim

against Agent Blackerby; (2) a First Amendment retaliation claim as to Agent Blackerby,

Dr. Landy, and Nurse Dean; (3) a malicious prosecution claim against Agent Blackerby

and Dr. Landy; (4) a false imprisonment claim against Agent Blackerby, Dr. Landy, and

Nurse Dean; and (5) a negligence/medical malpractice claim against the CSH Defendants.

(*Id*. at 7-12).

Agent Blackerby filed his motion to dismiss on December 18, 2017. (Dkt. 26).

Plaintiff filed a declaration opposing Agent Blackerby's motion on January 10, 2018 (Dkt.

36), and Agent Blackerby filed a reply on January 23, 2018 (Dkt. 38).

The CSH Defendants filed their motion for summary judgment on April 20, 2018.

(Dkt. 49). Plaintiff filed opposition papers on November 26, 2018. (Dkt. 69). The CSH

Defendants filed a reply on December 20, 2018. (Dkt. 73).

## DISCUSSION

### I.    Agent Blackerby's Motion to Dismiss

Agent Blackerby seeks dismissal of Plaintiff's claims on a number of grounds. First,

Agent Blackerby contends that any state common-law tort claims against him are barred

by the Federal Tort Claims Act (the "FTCA"). Second, Agent Blackerby argues that

Plaintiff cannot maintain a First Amendment retaliation claim against him because there is

no *Bivens*[2] remedy for First Amendment retaliation. Third, Agent Blackerby argues that Plaintiff cannot maintain a *Bivens* claim against him in his official capacity. Fourth, Agent Blackerby argues that Plaintiff has failed to state a claim under *Bivens*. Fifth, Agent Blackerby argues that, in any event, he has qualified immunity from Plaintiff's claims. Sixth and finally, Agent Blackerby contends that he has not been properly served.

For the reasons discussed below, the Court agrees that (1) Plaintiff's state common-law claims are barred by the FTCA, (2) Plaintiff cannot maintain a *Bivens* claim against Agent Blackerby in his official capacity, and (3) Plaintiff has failed to state a viable *Bivens* claim. Because these conclusions mandate dismissal of all Plaintiff's claims against Agent Blackerby, the Court need not and does not reach Agent Blackerby's remaining arguments.

## A.     State Common-Law Claims

As noted above, Plaintiff has asserted claims against Agent Blackerby for false arrest, malicious prosecution, and false imprisonment. Such claims generally may be asserted both as constitutional claims and as state common-law claims. *See Crews v. Cty. of Nassau*, 996 F. Supp. 2d 186, 203 (E.D.N.Y. 2014). However, as Agent Blackerby correctly points out in his motion to dismiss, state common-law claims cannot be brought against a federal employee acting within the scope of his employment. *See Castro v. United States*, 34 F.3d 106, 110 (2d Cir. 1994) ("[T]he FTCA makes individual government

---

[2]     *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).

employees immune from common-law tort claims for acts committed within the scope of their employment[.]'").

The "United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quotation omitted). The FTCA provides a limited waiver of sovereign immunity for claims against the United States for money damages for injury or loss of property caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his or her office or employment. *See* 28 U.S.C. § 1346(b). Under the FTCA, when a federal employee is sued for negligence, a United States Attorney determines whether the employee was acting within the scope of his or her employment, and if so, "the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1)-(2); *see* 28 C.F.R. § 15.4 ("The United States Attorney for the district where the civil action or proceeding is brought . . . is authorized to make the statutory certification that the Federal employee was acting within the scope of his office or employment with the Federal Government at the time of the incident out of which the suit arose.").

The FTCA applies to false arrest, false imprisonment, and malicious prosecution claims when they are asserted against "law enforcement officers of the United States Government," where "law enforcement officer" is defined as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h); *see Murphy v. United States*, 121 F.

Supp. 2d 21, 24 (D.D.C. 2000), *aff'd*, 64 F. App'x 250 (D.C. Cir. 2003) (discussing applicability of § 2680(h) to Secret Service agents).

In this case, the United States Attorney for the Western District of New York has certified that Agent Blackerby was acting within the scope of his employment with respect to Plaintiff's claims. (Dkt. 30). Accordingly, the United States must be substituted in as the sole defendant with respect to these claims and they must be construed pursuant to the FTCA.

"The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court. This requirement is jurisdictional and cannot be waived." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005); *see* 28 U.S.C. § 2675(a) (a claimant cannot commence an action under the FTCA "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing"). In this case, Plaintiff has not alleged that he filed an administrative tort claim with the United States Secret Service related to Agent Blackerby's actions,[3] and Lanelle Hawa, the Assistant to

---

[3]     Plaintiff does seem to indicate that he attempted to file an administrative tort claim with the Federal Bureau of Prisons (the "BOP") related to an incident that occurred during his transport to a court-ordered competency hearing. (*See* Dkt. 36 at ¶ 3). It is not clear from Plaintiff's submissions whether he ever presented the claim to the BOP. However, "[t]o adequately present a claim to an agency, a Notice of Claim . . . must provide enough information to permit the agency to conduct an investigation and to estimate the claim's worth. A claim must be specific enough to serve the purpose of the FTCA to enable the federal government to expedite the fair settlement of tort claims." *Palmer-Williams v. United States*, 675 F. App'x 70, 71 (2d Cir. 2017) (quotation omitted). Submission of a claim related to a transport injury cannot reasonably be said to have put the United States on notice of claims for false arrest, false imprisonment, and malicious prosecution related to the underlying criminal prosecution.

the Special Agent in Charge of the United States Secret Service Investigative Support Division, has submitted a sworn declaration stating that no such administrative tort claim has been filed. (*See* Dkt. 28).[4] Nor could Plaintiff timely file an administrative tort claim at this point. *See* 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues[.]"). The latest any of Plaintiff's claims accrued is September 10, 2015, the date he was acquitted and released from custody, and Plaintiff "has demonstrated neither reasonable diligence nor extraordinary circumstances" so as to warrant equitable tolling. *Palmer-Williams v. United States*, 675 F. App'x 70, 71 (2d Cir. 2017).

In sum, Plaintiff's state common-law claims against Agent Blackerby must be construed as claims against the United States under the FTCA, and the Court lacks subject matter jurisdiction over such claims because Plaintiff has failed to comply with the FTCA's administrative requirements. The Court therefore finds that Plaintiff's state common-law claims arising out of Agent Blackerby's actions must be dismissed.

---

[4]    "Although courts are generally limited to examining the sufficiency of the pleadings on a motion to dismiss, on a challenge to a district court's subject matter jurisdiction, the court may also resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings." *Licci by Licci v. Lebanese Canadian Bank, SAL*, 834 F.3d 201, 211 (2d Cir. 2016). Because the FTCA's administrative exhaustion requirement is jurisdictional, it is appropriate for the Court to consider Ms. Hawa's declaration. *See Fountain v. Karim,* 838 F.3d 129, 134 (2d Cir. 2016). For the same reason, it is appropriate to consider the certification that Agent Blackerby was acting within the scope of his employment. (*See* Dkt. 30).

## B.     *Bivens* Claims Against Agent Blackerby

The Court next considers Plaintiff's *Bivens* claims against Agent Blackerby. In *Bivens*, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). "The purpose of the *Bivens* remedy is to deter individual federal officers from committing constitutional violations." *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (quotation omitted).   Agent Blackerby seeks dismissal of all Plaintiff's *Bivens* claims against him under Federal Rule of Civil Procedure 12(b)(6) for failure to state a cognizable claim.   For the reasons discussed below, the Court finds dismissal of Plaintiff's *Bivens* claims against Agent Blackerby is warranted.

### 1.     Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).   A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

### 2.  Official Capacity Claims

As a threshold matter, the Court agrees with Agent Blackerby that, to the extent Plaintiff is attempting to assert a *Bivens* claim against him in his official capacity, such claim must fail.  The Second Circuit has explained:

> [A *Bivens* action] must be brought against the federal officers involved in their individual capacities.  Under the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent. Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived.

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994).  To the extent Plaintiff is seeking to assert a *Bivens* claim against Agent Blackerby in his official capacity, that claim is not viable and must be dismissed.

### 3. Individual Capacity Claims

Plaintiff has asserted claims against Agent Blackerby for First Amendment retaliation, false arrest, false imprisonment, and malicious prosecution. Agent Blackerby contends that these claims are not viable because they each "contain[] [lack of] probable cause as an essential element" and Plaintiff cannot overcome the presumption of probable cause established by a magistrate judge having signed an arrest warrant and a grand jury having returned an indictment. (Dkt. 31 at 18-19).

With respect to Plaintiff's malicious prosecution, false arrest, and false imprisonment claims, it is clear that a lack of probable cause is an essential element of each of these claims. "Claims for false arrest, whether brought under § 1983, pursuant to *Bivens*, or under state law, are analyzed pursuant to the same standards as the applicable state law's false arrest tort." *Nzegwu v. Friedman*, 605 F. App'x 27, 29 (2d Cir. 2015). "Under New York law, false arrest is considered to be a species of false imprisonment, and the two claims have identical elements." *Mejia v. City of N.Y.*, 119 F. Supp. 2d 232, 252 (E.D.N.Y. 2000). In particular, a plaintiff claiming false arrest or false imprisonment must show "that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged. If an officer has probable cause to arrest, the confinement is privileged." *Nzegwu*, 605 F. App'x at 29 (citation and quotation omitted). Similarly, "[t]he Second Circuit has held that New York law pertaining to probable cause is the controlling standard for a *Bivens* action for malicious prosecution" and "[t]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Bey v.*

*Fernandez*, No. 15CV7237PKCST, 2018 WL 4259865, at *6 (E.D.N.Y. Sept. 5, 2018) (citations and quotations omitted).

The law with respect to probable cause and First Amendment retaliation claims is less well-settled. Until recently, "the law of the Second Circuit made clear that a claim for retaliatory arrest required a plaintiff to show the absence of probable cause to support the arrest." *Fowler v. City of Stamford*, No. 3:18-CV-01498 (JAM), 2019 WL 188695, at *4 (D. Conn. Jan. 14, 2019) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)); *see also Caravalho v. City of N.Y.*, 732 F. App'x 18, 23 (2d Cir. 2018) ("The existence of probable cause defeats a First Amendment claim premised on the allegation that defendants arrested a plaintiff based on a retaliatory motive."). However, "more recently the validity of that rule has been called into question." *Fowler*, 2019 WL 188695, at *4. In particular, the Supreme Court's recent decision in *Lozman v. City of Riviera Beach, Fla.*, 138 S.Ct. 1945, 201 L.Ed.2d 342 (2018), held "that a plaintiff may prevail on a civil claim for damages for First Amendment retaliation for an arrest made pursuant to a retaliatory official municipal policy, even if there was probable cause for the arrest, if the alleged constitutional violation was a but-for cause of the arrest . . . [b]ut . . . left open the question of whether [that ruling] applies where, as here, the defendants are individual police officers, rather than a municipality." *Higginbotham v. Sylvester*, 741 F. App'x 28, 31 (2d Cir. 2018) (declining to reach the issue). *Lozman* thus leaves open the possibility that probable cause may not be a defense to a First Amendment retaliatory arrest claim in all cases.

However, the Court agrees with other courts that have considered the issue and concluded that "regardless whether the rule for retaliatory arrests may change in the future," individual defendants like Agent Blackerby are "protected by qualified immunity for conduct that did not violate clearly established law at the time of their actions." *Fowler*, 2019 WL 188695, at *4; *see also Galarza v. Monti*, 327 F. Supp. 3d 594, 605 (S.D.N.Y. 2018) ("An arresting officer is protected by qualified immunity from a lawsuit challenging an arrest as retaliatory where the arrest was supported by probable cause[.]"). Qualified immunity applies where a defendant's actions "did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (quotation omitted). Here, assuming that probable cause existed, a reasonable person could not have possibly known in 2014 when Plaintiff was arrested that Agent Blackerby's alleged actions constituted impermissible First Amendment retaliation, because the existing case law held to the contrary. Accordingly, the existence of probable cause is fatal to Plaintiff's First Amendment retaliation claim, as well as his other *Bivens* claims.

Agent Blackerby is also correct that there is a presumption of probable cause in this case. A magistrate judge signed an arrest warrant for Plaintiff and a grand jury returned an indictment as to him, both of which give rise a presumption of probable cause. *See Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003) ("[I]ndictment by a grand jury creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.") (quotation omitted); *Alcantara v. City of N.Y.*, 646 F. Supp. 2d

449, 460 (S.D.N.Y. 2009) ("The return of the indictment against the plaintiff by the grand jury, and the signing of a valid warrant for the plaintiff's arrest by a magistrate judge, each created a presumption of probable cause.").

"District courts have not hesitated to dismiss . . . claims that fail to rebut the presumption of probable cause that arises from a grand jury indictment." *Lacey v. Yates Cty.*, 30 F. Supp. 3d 213, 224 (W.D.N.Y. 2014) (collecting cases). In particular, "conclusory allegations" that "the defendant officers must have fabricated evidence in light of the plaintiff's version of the events and his ultimate acquittal . . . are insufficient to counter the presumption of probable cause, and to allow a court to draw the reasonable inference that the grand jury's indictment was a result of fraud or other misconduct." *Lewis v. City of N.Y.*, 591 F. App'x 21, 22 (2d Cir. 2015) (affirming dismissal of malicious prosecution claim). In this case, Plaintiff has alleged without elaboration that Agent Blackerby provided the grand jury with "false information" and took Plaintiff's words "out of context" without adequately considering Plaintiff's mental state. (*See* Dkt. 8 at 4-5). These are precisely the sort of conclusory allegations that courts in this Circuit have consistently found insufficient to rebut a presumption of probable cause. *See, e.g., Hadid v. City of N.Y.*, 730 F. App'x 68, 71 (2d Cir. 2018) ("We have routinely affirmed dismissals of malicious prosecution claims at the pleading stage where the plaintiff has failed to allege facts sufficient to rebut the presumption of probable cause flowing from a grand jury indictment."); *Jenkins v. Cty. of Washington*, 126 F. Supp. 3d 255, 278 (N.D.N.Y. 2015) (conclusory allegation that defendant knowingly presented false evidence to grand jury insufficient to overcome presumption of probable cause at motion to dismiss stage); *Stukes*

*v. City of N.Y.*, No. 13-CV-6166 NGG VVP, 2015 WL 1246542, at *6 (E.D.N.Y. Mar. 17, 2015) (conclusory allegation that a defendant presented "false facts" to the grand jury was insufficient to "plausibly suggest that his grand jury indictment was procured by fraud, perjury, the suppression of evidence, or other bad faith police conduct").

The Court finds that Plaintiff's allegations do not "allow [the Court] to draw the reasonable inference that the grand jury's indictment [or the magistrate judge's signing of the arrest warrant] was a result of fraud or other misconduct." *Lewis*, 591 F. App'x at 22. As such, Plaintiff cannot maintain his *Bivens* claims against Agent Blackerby in his individual capacity.

For the reasons discussed above, the Court finds that all of Plaintiff's claims against Agent Blackerby are subject to dismissal. Accordingly, Agent Blackerby's motion to dismiss is granted.

## II.     The CSH's Defendants' Motion for Summary Judgment

The Court turns next to the CSH Defendants' motion for summary judgment. The CSH Defendants contend that they are entitled to summary judgment as to Plaintiff's federal constitutional claims because they are not state actors. They further argue that there are no genuine issues of material fact with respect to any of Plaintiff's claims. For the reasons discussed below, the Court agrees that Plaintiff cannot maintain a federal constitutional claim against the CSH Defendants. The Court further finds that, under these circumstances, it should not exercise supplemental jurisdiction over Plaintiff's state law claims against the CSH Defendants.

## A.   <u>Legal Standard</u>

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

### B.  Plaintiff's Federal Constitutional Claims as to the CSH Defendants

Plaintiff has asserted both federal constitutional claims and state law claims against the CSH Defendants. The CSH Defendants argue, and the Court agrees, that Plaintiff's federal constitutional claims against the CSH Defendants cannot survive summary judgment because the CSH Defendants are not state actors.

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 941 F.2d 1292, 1295 (2d Cir. 1991) (internal quotation omitted). Private hospitals (and their employees) are generally not considered state actors. *See Doe v. 201 Rosenberg*, 996 F. Supp. 343, 356 (S.D.N.Y. 1998). However, "[t]here are three exceptional circumstances wherein state actor status is conferred" on a hospital: (1) when there is a nexus or joint action between the state and the hospital; (2) when the hospital acts under state compulsion; and (3) when the hospital's provision of services constitutes a public function. *Sykes v. McPhillips*, 412 F. Supp. 2d 197, 200-01 (N.D.N.Y. 2006). None of these exceptions applies here.

First, the fact that Plaintiff was held at CSH for involuntary inpatient psychiatric care does not establish state action. *See McGugan v. Aldana-Bernier*, 752 F.3d 224, 229

(2d Cir. 2014) ("[P]rivate health care professionals and a private hospital did not engage in state action when they involuntarily committed [a plaintiff] to the psychiatric ward[.]").

Second, Dr. Landy's report of Plaintiff's statements to the Secret Service also does not constitute state action. *See Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999) (providing information to law enforcement does not constitute action under color of law) (collecting cases); *see also Anilao v. Spota*, 774 F. Supp. 2d 457, 503 (E.D.N.Y. 2011) ("[R]eporting suspected criminal activity to law enforcement or other government officials is not sufficient to render a private party a 'state actor.'").

Third, the CSH Defendants are not liable for the alleged violation of Plaintiff's rights because they allowed Agent Blackerby to meet with Plaintiff while he was in their care. The record shows that Plaintiff consented to the meeting and Plaintiff has failed to produce or identify any evidence to controvert that conclusion. (*See* Dkt. 49-7 at 15 (testimony by Agent Blackerby that Plaintiff was told that the interview was voluntary and he was free to leave at any time); Dkt. 49-8 at 2 (contemporaneous medical records indicating Plaintiff agreed to speak with Agent Blackerby)).

Moreover, even assuming that Plaintiff was unwilling to meet with Agent Blackerby, it is undisputed that Plaintiff was already being held by CSH for legitimate medical reasons at the time he met with Agent Blackerby. In *Kia P. v. McIntyre*, 235 F.3d 749 (2d Cir. 2000), the Second Circuit held that where a hospital is holding a patient "as a private actor providing medical care," it is not liable for constitutional violations even if it thereafter also detains the patient for governmental purposes. *Id.* at 757 (finding that a hospital, even if considered a state actor, was "incapable of depriving . . [a patient] of

- 18 -

liberties that had already been taken away by the Hospital's medical staff as private, professional persons"). In other words, even assuming that the CSH Defendants were detaining Plaintiff for law enforcement purposes during the meeting with Agent Blackerby, they were also holding him for medical treatment purposes during that time, and therefore cannot be said to have unconstitutionally seized him or deprived him of his liberty.

Plaintiff has failed to identify any other basis on which the CSH Defendants could be considered state actors or held liable for the alleged deprivation of his constitutional rights. Accordingly, the CSH Defendants are entitled to summary judgment on Plaintiff's federal constitutional claims.

### C.    State Law Claims Against CSH Defendants

Having determined that all of Plaintiff's claims against Agent Blackerby and all of Plaintiff's federal claims against the CSH Defendants are not viable, the Court considers whether it should continue to exercise supplemental jurisdiction over Plaintiff's state law claims against the CSH Defendants and concludes that it should not.

Supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendant claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). The Court's exercise of this discretion is governed by 28 U.S.C. § 1367 ("§ 1367"):

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). Under § 1367(c):

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1)    the claim raises a novel or complex issue of State law,
>
> (2)    the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)    the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4)    in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* § 1367(c). "[T]he discretion implicit in the word 'may' in subdivision (c) of § 1367 permits the district court to weigh and balance several factors . . . ." *Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir. 1994). After dismissing all federal claims, the district court must "reassess its jurisdiction over the case by considering . . . judicial economy, convenience, fairness, and comity." *Motorola Credit Corp. v. Uzan,* 388 F.3d 39, 56 (2d Cir. 2004). "[D]ismissal of pendent state law claims under such circumstances is generally appropriate, as [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Ross v. Woods,* 412 F. App'x 392, 393 (2d Cir. 2011) (quotation omitted and second alteration in original).

In this case, the Court has dismissed all the claims over which it has original jurisdiction. The Court lacks original subject matter jurisdiction over the remaining claims because there is no diversity of citizenship between the parties. *See* 28 U.S.C. § 1332. Upon consideration of all relevant factors, the Court declines to exercise jurisdiction over

Plaintiff's state law claims against the CSH Defendants. "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Purgess*, 33 F.3d at 138 (quotation omitted); *see also Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (where "federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims"). Any discovery the parties have completed can be used in any subsequent state court proceeding. And, given this Court's significant civil and criminal dockets, the parties may be better served by a state court which can finally decide the state law claims in a timely and efficient manner.

The dismissal of Plaintiff's state law claims is without prejudice. *See JetBlue Airways Corp. v. CopyTele Inc.*, 629 F. App'x 44, 45 (2d Cir. 2015) (dismissal for lack of subject matter jurisdiction must be without prejudice). Moreover, under 28 U.S.C. § 1367(d), the statute of limitations for Plaintiff's state law claims has been tolled while the instant action was pending and shall be tolled for a period of 30 days after dismissal. In order to pursue his remaining state law claims, Plaintiff must file a state court action within the applicable time period.

## CONCLUSION

For the foregoing reasons, the Court grants Agent Blackerby's motion to dismiss (Dkt. 26), grants the CSH Defendants' motion for summary judgment (Dkt. 49) as to Plaintiff's federal claims, and declines to exercise supplemental jurisdiction over Plaintiff's

state law claims against the CSH Defendants, which are hereby dismissed without prejudice. The Clerk of Court is directed to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: March 26, 2019
          Rochester, New York